This memorandum opinion was not selected for publication in the New Mexico Reports. Please see Rule 12-405 NMRA for restrictions on the citation of unpublished memorandum opinions. Please also note that this electronic memorandum opinion may contain computer-generated errors or other deviations from the official paper version filed by the Court of Appeals and does not include the filing date.

## IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

**STATE OF NEW MEXICO,**

Plaintiff-Appellee,

v.                                                                          **No. 28,134**

**JERRY SPENCER,**

Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF SANTA FE COUNTY**
**Stephen D. Pfeffer, District Judge**

Gary K. King, Attorney General
Ann M. Harvey, Assistant Attorney General
Santa Fe, NM

for Appellee

Hugh W. Dangler, Chief Public Defender
Corey J. Thompson, Assistant Appellate Defender
Santa Fe, NM

for Appellant

**MEMORANDUM OPINION**

**SUTIN, Judge.**

Defendant Jerry Spencer appeals his conviction after a jury trial for aggravated battery with a deadly weapon, contrary to NMSA 1978, Section 30-3-5 (1969). Defendant raises five issues on appeal: (1) whether the district court erred in allowing the prosecutor to elicit hearsay testimony from a police officer; (2) whether the district court erred in failing to grant a mistrial after the prosecutor referred to a hearsay statement during cross-examination of a witness; (3) whether there was sufficient evidence to support Defendant's conviction; (4) whether defense counsel's failure to retain a medical expert amounted to ineffective assistance of counsel; and (5) whether the district court erred in allowing the State to submit an instruction for the offense of aggravated battery with a deadly weapon. We affirm.

**BACKGROUND**

At about 5:30 on a December morning, Edwina Esquibel called 911 from a pay phone at a condominium complex and reported that her boyfriend had tried to stab her with a large barbeque fork. She described her boyfriend as wearing gray sweat pants and no shirt. When police officers arrived, Ms. Esquibel ran up to them and said her boyfriend held a fork to her neck and threatened to kill her. She was crying and hysterical and had injuries to her face and neck that were consistent with the prong-like marks of a barbeque fork. The officers saw a man wearing sweat pants and no shirt near the condo of James and Rosemary Ortega. When officers knocked on the

2

door of the Ortegas' condo, Mr. Ortega said Defendant was not there. The officers left to look around for Defendant, but later decided that they should check inside the Ortegas' home. When they returned, Mr. Ortega said Defendant had just snuck in. They found Defendant in a bedroom in gray sweat pants and no shirt and arrested him. An arresting officer noticed that Defendant was not short of breath and that his skin was warm, which seemed inconsistent with Mr. Ortega's story that Defendant had "just snuck in" from outside.

Ms. Esquibel testified that she was Defendant's girlfriend and had been living with him for four months. The night before the incident, Defendant had been drinking. They started arguing at about two or three in the morning and, at one point, Defendant choked her twice, causing her to pass out each time. Defendant also punched her in the head three times and knocked her out. Ms. Esquibel ran downstairs to the Ortegas' condo. In the Ortegas' home, after Defendant told Ms. Esquibel to come out of the bedroom, Defendant jumped on her and tried to shove a two-pronged barbeque fork that he took from his own kitchen into her neck. He accused her of trying to steal his money. Mr. Ortega was able to get Defendant off Ms. Esquibel, and she ran to a pay phone near the laundry room and called 911. Ms. Esquibel said Defendant scratched her face and left marks on her neck.

A police officer who responded to the call testified that Ms. Esquibel had marks on her face and neck that were consistent with being punctured by a barbeque fork. The State introduced photographs that were taken of Ms. Esquibel on the night of the incident, which depicted some scratches on her cheek and marks on her neck as well as various bruises. After Defendant was arrested, Officer Donald Duran talked with Mrs. Ortega, who told him that when Defendant came into their home he had something with him that he put in her kitchen drawer. When Officer Duran asked her what it was, Mrs. Ortega opened the drawer and pointed to a fork. Officer Duran collected the fork, and Ms. Esquibel identified it at the scene as the one Defendant had used to attack her in the Ortegas' home. At trial, Ms. Esquibel identified the fork as the weapon used by Defendant, and it was admitted into evidence.

Mr. Ortega was charged with offenses related to trying to hide Defendant, but took a plea in exchange for his testimony against Defendant. The State, however, did not call Mr. Ortega as a witness. The State also did not call Mrs. Ortega, who apparently had absconded.

Defendant testified. He claimed that Ms. Esquibel was just renting a room from him. He admitted that he had gotten angry with Ms. Esquibel when she denied stealing from him, but claimed he did not choke her, punch her, or try to stab her with

4

a barbeque fork. Defendant also called Mr. Ortega, who testified that he did not hide Defendant and did not see him try to hurt Ms. Esquibel.

The jury convicted Defendant of aggravated battery with a deadly weapon, which did not require a finding that Ms. Esquibel was a household member. The jury acquitted Defendant of tampering with evidence, which was based on hiding the fork.

**DISCUSSION**

**I.      Officer Duran's Testimony**

**A.      Hearsay Objection**

Defendant argues that the district court erred when it allowed Officer Duran to testify about how he found the barbeque fork in the Ortegas' kitchen. "We review the admission of evidence under an abuse of discretion standard and will not reverse in the absence of a clear abuse." *State v. Sarracino*, 1998-NMSC-022, ¶ 20, 125 N.M. 511, 964 P.2d 72.

During the State's case, Officer Duran was called to testify about responding to the domestic violence call, apprehending Defendant in the Ortegas' home, and collecting the barbeque fork from the Ortegas' kitchen drawer. When Officer Duran started to testify about what Mrs. Ortega told him after police officers found Defendant in the back bedroom of the Ortegas' home and arrested him, defense counsel objected. During a bench conference, defense counsel stated that she did not

object to Officer Duran testifying about collecting the evidence, but she did object to him saying anything about what Mrs. Ortega told him. The prosecutor explained that Mrs. Ortega's statements were needed to show why Officer Duran went to the kitchen drawer and collected the barbeque fork. The district court responded:

> Well, the response . . . is not for the truth of the matter asserted, but as to why he went and looked at a particular place, why he went with her to the drawer. And I suppose if I allowed it for that reason, I would give a limiting instruction, if you wish.

Defense counsel initially refused a limiting instruction. Officer Duran then testified that Mrs. Ortega told him that when Defendant came into her home he had something with him, and he stuck it in her kitchen drawer. Officer Duran asked her what it was, and she went to the drawer, opened it, and pointed to a fork. After the fork was taken into evidence, Ms. Esquibel identified it as the weapon that Defendant had used to attack her. At trial, Officer Duran identified the State's Exhibit 1 as the barbeque fork that Mrs. Ortega showed him in the kitchen drawer. Ms. Esquibel also identified the exhibit as the weapon Defendant used against her.

During a discussion between counsel and the court, after Officer Duran testified, defense counsel stated that if Mrs. Ortega was not going to testify, she would probably need a limiting instruction that the district court had offered. The court instructed the jury as follows.

6

Earlier, Ladies and Gentleman, Officer Duran testified as to what Mrs. Ortega told him with regard to her recounting what . . . Defendant did coming into [their home ] with a fork and putting it in a drawer. That's not evidence of what [Defendant] actually did. It's only for the limited purpose of explaining why the officer went to the drawer, took out a fork, and placed it into evidence. It's not evidence of actually what . . . Defendant did; it would be hearsay for that purpose.

Defendant continues to argue that Mrs. Ortega's statements were offered for the truth of the matter asserted, that Defendant attacked Ms. Esquibel with a barbeque fork, and were inadmissible hearsay under Rule 11-801(C) NMRA. The State contends that the statements were not admitted for their truth, but to show how the barbeque fork was found, and thus were not hearsay.

Hearsay is defined as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." *Id.* However, out-of-court "[s]tatements offered for a purpose other than their truth are not hearsay." *State v. Otto*, 2007-NMSC-012, ¶ 18, 141 N.M. 443, 157 P.3d 8.

Extrajudicial statements or writings may properly be received into evidence, not for the truth of the assertions therein contained, or the veracity of the out-of-court declarant, but for such legitimate purposes as that of establishing knowledge, belief, good faith, reasonableness, motive, effect on the hearer or reader, and many others.

*State v. Alberts*, 80 N.M. 472, 474-75, 457 P.2d 991, 993-94 (Ct. App. 1969). "[T]he evidence must be consistent with a legitimate purpose and have some proper probative effect upon an issue in the case." *Id*. at 475, 457 P.2d at 994.

While our courts have recognized that out-of-court statements offered to explain the basis of a police investigation can be highly prejudicial, statements offered to explain police conduct "can be admissible if relevant to a fact of consequence and not offered to prove the truth of the matter asserted." *Otto*, 2007-NMSC-012, ¶ 20 (internal quotation marks and citation omitted). Here, the district court determined that the testimony at issue was admissible not for the truth of the matter asserted, but to explain why Officer Duran went to the kitchen drawer and took out the barbeque fork. Thus, the district court concluded that the statements were offered for the legitimate purpose of explaining how Officer Duran recovered the weapon in the Ortegas' home and that the statements were not hearsay. *See* Rule 11-801(C). We cannot say that the admission of these statements was "clearly untenable or not justified by reason." *State v. Rojo*, 1999-NMSC-001, ¶ 41, 126 N.M. 438, 971 P.2d 829 (filed 1998) (internal quotation marks and citation omitted).

We note that defense counsel raised no argument below that the testimony was not relevant. *See* Rule 11-402 NMRA (providing that all relevant evidence is admissible unless otherwise provided by law). Nor did counsel argue that the

8

testimony was more prejudicial than probative. *See* Rule 11-403 NMRA (providing that even relevant evidence "may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice"). Defense counsel simply objected to the admission of Mrs. Ortega's statements on hearsay grounds. *Cf. State v. Hogervorst*, 90 N.M. 580, 588, 566 P.2d 828, 836 (Ct. App. 1977) (holding that a claim that evidence is more prejudicial than probative must be raised in the lower court); *State v. Cardona*, 86 N.M. 373, 374, 524 P.2d 989, 990 (Ct. App. 1974) (same). Under these circumstances, we hold there was no abuse of discretion in the district court's determination that the statements were admissible.

To the extent that Defendant now argues on appeal that he was prejudiced, we are not persuaded. *See State v. Stampley*, 1999-NMSC-027, ¶ 38, 127 N.M. 426, 982 P.2d 477 (requiring a showing that the erroneous admission of evidence was detrimental); *see generally* Rule 11-103(A) NMRA (requiring that a substantial right of a party be affected for an evidentiary ruling to be error). Not all statements that inculpate a defendant are unfairly prejudicial. *State v. Woodward*, 121 N.M. 1, 6, 908 P.2d 231, 236 (1995). Here, the district court provided a limiting instruction. *See* Rule 11-105 NMRA ("When evidence which is admissible as to one party or for one purpose but not admissible as to another party or for another purpose is admitted, the court, upon request, shall restrict the evidence to its proper scope and instruct the jury

9

accordingly."). The district court instructed the jury to consider Officer Duran's testimony about Mrs. Ortega's statements not for evidence about what Defendant actually did, but "for the limited purpose of explaining why the officer went to the drawer, took out a fork, and placed it into evidence." "We presume that the jury followed the court's limiting instruction." *Otto*, 2007-NMSC-012, ¶ 17; *see also State v. Vialpando*, 93 N.M. 289, 296-97, 599 P.2d 1086, 1093-94 (Ct. App. 1979) ("New Mexico has frequently held that a prompt admonition from the court to the jury to disregard and not consider inadmissible evidence sufficiently cures any prejudicial effect which otherwise might result.").

Defendant acknowledges that the district court properly issued a limiting instruction, but asserts without further explanation that "the curative instruction did not remedy the prejudicial effect of the testimony and most likely contributed to [his] conviction." Contrary to Defendant's assertion, we have every indication that the jury followed the limiting instruction. The jury acquitted Defendant of the offense of tampering, which was based on the allegation that Defendant hid the fork. If the jury had considered Mrs. Ortega's statements for the truth of what Defendant was accused of, which was that he placed the fork in the kitchen drawer in the Ortegas' home, then the jury likely would have found Defendant guilty of tampering. Thus, Defendant has

not persuaded us that the limiting instruction failed to remedy any prejudicial effect of Officer Duran's testimony.

We further are not persuaded by Defendant's contention that the admission of prejudicial statements requires reversal for plain error as in *State v. Lucero*, 116 N.M. 450, 863 P.2d 1071 (1993). In *Lucero*, a clinical psychologist was allowed to testify as an expert witness about statements a child victim made to her that identified the defendant as the perpetrator of sexual abuse. *Id*. at 452, 863 P.2d at 1073. Our Supreme Court found that defense counsel's hearsay objections did not adequately preserve the defendant's allegations of error with respect to admission of the expert testimony. *Id*. at 453, 863 P.2d at 1074. However, the Court reviewed the issue for plain error and found that allowing the witness to testify about the identity of the accused improperly bolstered the victim's credibility. *Id.* at 455, 863 P.2d at 1076. The Court held that the prejudicial effect of recounting the victim's statements outweighed any probative value. *Id.* at 456, 863 P.2d at 1077. Because credibility was a key issue, the expert witness's testimony likely swayed the jury, giving rise to "grave doubts concerning the validity of the verdict and the fairness of the trial." *Id.* Thus, the admission of the improper testimony constituted plain error. *Id.*

Relying on *Lucero*, Defendant argues that the district court erred because the hearsay improperly bolstered Ms. Esquibel's testimony by connecting Defendant to

the barbeque fork. We are not persuaded that this case raises the same doubts as in *Lucero.* As just discussed, the objectionable testimony concerns Defendant's actions in placing the fork in the kitchen drawer, but the jury acquitted Defendant of tampering, the charge that was most directly related to that conduct. In addition, Ms. Esquibel did not testify that Defendant placed the fork in the drawer, and Mrs. Ortega's statements did not refer to Defendant attacking Ms. Esquibel with the fork. Thus, it is unlikely that Mrs. Ortega's statements bolstered Ms. Esquibel's credibility in the same way that an expert witness repeating a victim's claim that the defendant sexually abused her did in *Lucero*. *Cf. id.* (concluding that the testimony was improper because it repeated the victim's statements and commented directly on the victim's truthfulness).

Moreover, while credibility is important in this case, the State presented other evidence that supports Ms. Esquibel's claim that Defendant attacked her with a barbeque fork. Ms. Esquibel's testimony that Defendant tried to attack her with a barbeque fork in the Ortegas' home was consistent with what she said on the 911 tape and what she told officers at the scene. Defendant and the fork were found in the Ortegas' home. Ms. Esquibel identified the fork at the scene and at trial as the weapon used in the attack. Officers testified that Ms. Esquibel's injuries were consistent with having been inflicted by a barbeque fork. The jury saw photographs of her injuries,

12

and the fork was admitted into evidence. Thus, there is other circumstantial evidence that supports the jury's verdict. The admission of the testimony did not constitute plain error. *See State v. Dylan J.*, 2009-NMCA-027, ¶ 15, 145 N.M. 719, 204 P.3d 44 (explaining that plain error applies only if we have grave doubts about the validity of the verdict). Based on the foregoing analyses, we hold that the district court did not abuse its discretion in admitting Officer Duran's testimony about how he located the fork.

**B.    Confrontation**

Defendant also argues that he was denied his right to confrontation when the district court admitted Officer Duran's statements about what Mrs. Ortega told him about the barbeque fork. Defendant fails to inform this Court how this issue was preserved. Our review of the record provides no indication that Defendant made a Confrontation Clause argument to the district court. To the contrary, defense counsel's objections to Officer Duran's testimony were based solely on hearsay arguments. When defense counsel sought to confirm that the State was not planning to call Mrs. Ortega as witness, she stated that her only concern was being prepared for cross-examination and what she would say about Mrs. Ortega's absence during closing arguments. We conclude that this issue is not preserved for our review. Thus, we are limited to reviewing for fundamental error. *See State v. Dietrich*, 2009-

NMCA-031, ¶¶ 47, 51, 145 N.M. 733, 204 P.3d 748 (recognizing that preserved *Crawford* issues are analyzed under a harmless error standard and un-preserved *Crawford* issues are reviewed for fundamental error only), *cert. denied*, 2009-NMCERT-002, 145 N.M. 704, 204 P.3d 29.

Defendant does not ask us to review for fundamental error, and we are not persuaded that reversal for fundamental error is required. Under *Crawford v. Washington*, 541 U.S. 36, 68 (2004), the State may not introduce a "testimonial" statement against a criminal defendant at trial unless it establishes that the declarant is unavailable to testify at trial and that the defendant had a prior opportunity for cross-examination. *See State v. Rivera*, 2008-NMSC-056, ¶ 18, 144 N.M. 836, 192 P.3d 1213, *cert. denied*, 2009-NMCERT-005, 146 N.M. 728, 214 P.3d 793. Defendant contends that this issue turns on whether the statements are testimonial. As discussed earlier in this opinion, the district court admitted Officer Duran's testimony about Mrs. Ortega's statements not for the truth of the matter asserted, but to show why Officer Duran went to the drawer and recovered the fork. Because the testimony was not hearsay, the admission of Officer Duran's testimony does not violate *Crawford. See Dietrich*, 2009-NMCA-031, ¶ 53. Accordingly, we hold there was no fundamental error.

**II.    Prosecutorial Misconduct**

14

Defendant argues that the district court erred when it failed to grant a mistrial after the prosecutor referred to an inadmissible hearsay statement during his cross-examination of Mr. Ortega. Defendant contends that the reference to inadmissible hearsay in the prosecutor's question rose to the level of prosecutorial misconduct.

"The trial court has broad discretion in controlling the conduct and remedying the errors of counsel during trial." *State v. Duffy*, 1998-NMSC-014, ¶ 46, 126 N.M. 132, 967 P.2d 807. When an issue of prosecutorial misconduct has been preserved by a specific and timely objection at trial, "we determine whether the trial court abused its discretion by denying a motion for a new trial based upon the prosecutor's conduct, by overruling the defendant's objection to the challenged conduct, or by otherwise failing to control the conduct of counsel during trial." *Id.* (noting that "the trial court is in the best position to evaluate the significance of any alleged prosecutorial errors"). If no claim of prosecutorial misconduct was raised at trial, we review for fundamental error. *State v. Allen*, 2000-NMSC-002, ¶ 95, 128 N.M. 482, 994 P.2d 728 (filed 1999). "Prosecutorial misconduct rises to the level of fundamental error when it is so egregious and had such a persuasive and prejudicial effect on the jury's verdict that the defendant was deprived of a fair trial." *Id.* (internal quotation marks and citation omitted). "An isolated, minor impropriety ordinarily is not sufficient to warrant

15

reversal, because a fair trial is not necessarily a perfect one[.]" *Id.* (internal quotation marks and citation omitted).

Defendant claims that defense counsel requested a mistrial based on prosecutorial misconduct. However, our review of the record does not support this assertion. During the State's case, defense counsel asked the district court to ask the State to use caution in its direct examination of Mr. Ortega regarding any hearsay with regard to Mrs. Ortega. The court asked counsel to approach the bench if testimony touched on that. The State did not call Mr. Ortega as a witness, but Defendant did. Mr. Ortega testified that he took a plea on charges related to hiding Defendant. He said he did not see Defendant attempt to stab Ms. Esquibel with a barbeque fork. On cross-examination, the prosecutor asked numerous questions in an attempt to attack Mr. Ortega's credibility. When Mr. Ortega claimed, contrary to his plea, that Defendant was not hiding in his home, the prosecutor asked, "Do you know your wife has told the police that [Defendant] was there the whole time?" Defense counsel objected, and the district court sustained the objection and struck the answer.

After additional witnesses testified and the State rested, the district court reminded the State to be careful in its closing argument about Mrs. Ortega's statements about the barbeque fork. Defense counsel then stated, "And short of requesting a mistrial, I wanted to address [the prosecutor's] question to Mr. Ortega

16

regarding what Mr. Ortega's wife said." Defense counsel described the objectionable question as pertaining to the barbeque fork and claimed that the prosecutor was warned not to elicit any testimony about Mrs. Ortega's hearsay statements. The court and the prosecutor pointed out that the sustained objection concerned a question about whether Defendant was in the Ortegas' home when police were looking for him. The court discussed with counsel the possibility of giving a curative instruction, but defense counsel could not articulate how the instruction should be phrased and ultimately decided against it. Defense counsel told the court that she would drop it, but expressed concern that the prosecutor would refer to Mrs. Ortega's hearsay statements in closing. The district court cautioned the State that it could only refer to Mrs. Ortega's statements for the limited purpose for which they were admitted. During closing, the State did not refer to Mrs. Ortega's statements about Defendant's presence in the Ortegas' home or actions with respect to the fork. Instead, the State stated that Officer Duran spoke with Mrs. Ortega, who showed him the barbeque fork in the drawer, and told the jury it could infer from the other evidence that Defendant placed it there.

Contrary to Defendant's assertions, the record demonstrates that Defendant did not make a timely motion for a mistrial based on prosecutorial misconduct. To the extent that Defendant preserved any claim that prosecutorial misconduct occurred, we

are not persuaded that the district court erred in ruling on it. Although the prosecutor may have improperly referred to Mrs. Ortega's hearsay statement about Defendant being in the Ortegas' home, the district court promptly sustained Defendant's objection to the question and struck it from the evidence. When defense counsel later expressed concern about the question, the district court offered a curative instruction, which defense counsel declined. At that point, defense counsel indicated that she was concerned about the State making further references to Mrs. Ortega's hearsay statements. In effect, defense counsel asked the district court not to let in any more inadmissible hearsay. Defense counsel got the relief requested because her objection was sustained, the prosecutor's question was stricken, and the State did not refer to it during closing argument. *See State v. Trevino*, 113 N.M. 804, 810, 833 P.2d 1170, 1176 (Ct. App. 1991) ("Defendant may not complain on appeal when the specific relief requested was granted."). Under these circumstances, we are not persuaded that the district court abused its discretion in ruling on the challenged conduct or in otherwise failing to control the prosecutor's conduct during trial. *Duffy*, 1998-NMSC-014, ¶ 46 (noting that the district court has broad discretion in "remedying the errors of counsel").

We further are not persuaded that the prosecutor's question caused "such a persuasive and prejudicial effect on the jury's verdict that . . . [D]efendant was

deprived of a fair trial." *Id.* Defendant contends that the State was trying to use the hearsay statement to prove Defendant's guilt by providing indirect support for Ms. Esquibel's testimony. However, the prosecutor's question came in the context of trying to impeach Mr. Ortega's testimony after he denied hiding Defendant in his home after police showed up to investigate. Although Defendant argues that he was prejudiced by the testimony because it improperly bolstered Ms. Esquibel's testimony, Ms. Esquibel did not testify about whether Defendant was in the Ortegas' home. In addition, there was other evidence to support an inference that Defendant had been in the Ortega's home the whole time police were looking for him. The officers testified that they were looking for a man in sweat pants and no shirt. Officer Duran testified that Defendant was arrested after being found in a back bedroom in sweat pants and no shirt and that his skin was warm, which led the officer to believe that Defendant had been there while they were looking for him. We therefore do not agree that Defendant demonstrated any likelihood of prejudice so as to deprive him of a fair trial. *See In re Crystal L.*, 2002-NMCA-063, ¶ 19, 132 N.M. 349, 48 P.3d 87 (stating that the prosecution's improper closing statements did not constitute reversible error without evidence of substantial prejudice when the district court sustained the defendant's objection, but the defendant did not request any other relief or other remedy).

Defendant fails to demonstrate that the district court, in addressing the problem of the prosecutor's question, abused its discretion in sustaining Defendant's objection, striking the question from the record, offering a limiting instruction, cautioning the prosecutor to limit his argument, or failing to grant a mistrial when one was not requested. Defendant also fails to demonstrate that any error prejudiced him. We therefore reject Defendant's assertion that he was deprived of a fair trial based on prosecutorial misconduct.

Because we hold there was no reversible error based on Defendant's claim of prosecutorial misconduct, we also reject Defendant's contention that the prosecutor's question rose to the level of misconduct that implicates double jeopardy concerns under *State v. Breit*, 1996-NMSC-067, 122 N.M. 655, 930 P.2d 792. As discussed earlier in this opinion, we are not persuaded that the prosecutor's reference to Mrs. Ortega's statement during his cross-examination of Mr. Ortega prejudiced Defendant such that reversal is required. Although Defendant also points to the prosecutor's elicitation of inadmissible hearsay from Officer Duran as an additional impropriety, the district court admitted the officer's testimony as non-hearsay. Thus, the prosecutor did not act in willful disregard of Defendant's right to a fair trial with respect to that testimony. Because Defendant can point only to one incident, this case does not involve the sort of "pervasive, incessant, and outrageous" misconduct that

20

would persuade us that the prosecutor acted in willful disregard of Defendant's right to a fair trial. *Cf. id.* ¶ 37. Accordingly, we hold that any alleged misconduct not only did not deprive Defendant of a fair trial, but did not rise to the level of willful disregard required to bar retrial on double jeopardy grounds.

**III. Sufficiency of the Evidence**

Defendant challenges the sufficiency of the evidence to support his conviction for aggravated battery. Defendant raises this issue pursuant to *State v. Franklin*, 78 N.M. 127, 129, 428 P.2d 982, 984 (1967), and *State v. Boyer*, 103 N.M. 655, 659, 712 P.2d 1, 5 (Ct. App. 1985).

We conduct our review for the sufficiency of the evidence by viewing the evidence in the light most favorable to the State. *State v. Sutphin*, 107 N.M. 126, 131, 753 P.2d 1314, 1319 (1988). We resolve all conflicts in the evidence and indulge all permissible inferences from the evidence in favor of the verdict. *Id.* We ascertain whether there was substantial evidence of either a direct or circumstantial nature to enable a rational factfinder to find that each element of the crime was established beyond a reasonable doubt. *Id.*

To convict Defendant of aggravated battery with a deadly weapon, the jury was required to find that Defendant "touched or applied force to [Ms.] Esquibel by putting a large fork to her," that the large fork could cause death or great bodily harm when

21

used as a weapon, and that Defendant intended to injure Ms. Esquibel. *See* UJI 14-322 NMRA. In support of these elements, the State introduced the testimony of Ms. Esquibel, who told the jury that after choking and punching her until she passed out, Defendant followed Ms. Esquibel to the Ortegas' home with a barbeque fork, got on top of her, and started shoving the fork into Ms. Esquibel's neck. Ms. Esquibel testified that the fork scratched her cheek and left marks on her neck.

When Ms. Esquibel called 911, she reported that she was attacked by Defendant with a barbeque fork and described him as wearing sweat pants and no shirt. Officers who responded to the 911 call noticed that Ms. Esquibel was upset and frightened and that the injuries to her face and neck were consistent with being caused by a two-pronged fork. Officers found Defendant wearing sweat pants and no shirt in the Ortegas' home, where Ms. Esquibel claimed the attack occurred with the fork. Officers recovered a barbeque fork from a drawer in the Ortegas' kitchen. Ms. Esquibel identified the fork as the one used in the attack. An officer testified that Ms. Esquibel's injuries were consistent with the fork recovered in the Ortegas' kitchen. The jury saw photos of Ms. Esquibel's injuries that were taken on the night of the incident. Under these circumstances, the State presented sufficient evidence to support Defendant's conviction for aggravated battery with a deadly weapon.

22

In challenging the sufficiency of the evidence, Defendant asserts that the photographs the State introduced were of old injuries, which were inconsistent with Ms. Esquibel's testimony. Defendant, however, is asking us to re-weigh the evidence. The jury was entitled to evaluate the scratches and marks depicted in the photographs, and in light of Ms. Esquibel's and the officers' testimony, determine that the injuries were consistent with Ms. Esquibel's version of the events. *State v. Salas*, 1999-NMCA-099, ¶ 13, 127 N.M. 686, 986 P.2d 482 (recognizing that it is for the factfinder to resolve any conflict in the testimony of the witnesses and to determine where the weight and credibility lay).

Defendant further complains that the State did not offer any direct evidence linking Defendant to the barbeque fork and instead relied on hearsay testimony from Officer Duran. Evidence may be direct or circumstantial. *Sutphin*, 107 N.M. at 131, 753 P.2d at 1319. As discussed earlier in this opinion, Ms. Esquibel testified about the attack and the responding officers testified about seeing Ms. Esquibel's injuries, finding Defendant in the Ortegas' home, and recovering the fork from the Ortegas' kitchen. This testimony, as well as the photographs and the fork that were admitted into evidence, presented sufficient evidence to support Ms. Esquibel's account of the events. We therefore hold that the evidence presented in this case supports Defendant's conviction for aggravated battery with a deadly weapon.

23

## IV.  Ineffective Assistance of Counsel

Defendant argues that his trial counsel was ineffective for failing to retain a medical expert to testify at trial.  Defendant advances this issue pursuant to *Franklin*, 78 N.M. at 129, 428 P.2d at 984, and *Boyer*, 103 N.M. at 659, 712 P.2d at 5.

"When an ineffective assistance claim is first raised on direct appeal, we evaluate the facts that are part of the record.  If facts necessary to a full determination are not part of the record, an ineffective assistance claim is more properly brought through a habeas corpus petition, although an appellate court may remand a case for an evidentiary hearing if the defendant makes a prima facie case of ineffective assistance." *State v. Roybal*, 2002-NMSC-027, ¶ 19, 132 N.M. 657, 54 P.3d 61.  "To establish a prima facie case of ineffective assistance of counsel, Defendant must show that (1) counsel's performance was deficient in that it fell below an objective standard of reasonableness; and (2) that Defendant suffered prejudice in that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *State v. Aker*, 2005-NMCA-063, ¶ 34, 137 N.M. 561, 113 P.3d 384 (internal quotation marks and citation omitted).

Defendant contends that his trial counsel's failure to retain a medical expert to testify about the age of the bruises in the photographs of Ms. Esquibel likely hindered the jury from concluding that the bruises were old and thus inconsistent with Ms.

Esquibel's testimony. Trial counsel apparently did not retain a medical expert because she assumed it is common knowledge that dark blue or yellow bruises indicate older injuries. "On appeal, we will not second guess the trial strategy and tactics of the defense counsel." *See Lytle v. Jordan*, 2001-NMSC-016, ¶ 43, 130 N.M. 198, 22 P.3d 666 (internal quotation marks and citation omitted). Because counsel's decision appears to be objectively reasonable, we are not persuaded that counsel's performance was deficient.

In addition, there is no indication in the record that counsel's decision caused Defendant to suffer undue prejudice. Even if the jury concluded that Ms. Esquibel's bruises were not new and that her injuries were not consistent with being punched or choked during this incident, it still could have found Defendant guilty of aggravated battery. The pertinent evidence concerned whether Defendant held a barbeque fork to Ms. Esquibel's neck. In addition to Ms. Esquibel's testimony, the jury viewed photographs showing scratches on her cheek and marks on her neck. The jury saw a photograph of the barbeque fork, as well as the fork itself, which Ms. Esquibel identified as the fork that Defendant used during the attack. The jury also heard testimony from a responding police officer, who testified that the injuries to Ms. Esquibel's face and neck were consistent with being stabbed by a barbeque fork. Thus, the State introduced other evidence that the injuries depicted in the photographs

and witnessed by police officers were consistent with Ms. Esquibel's testimony. We are not persuaded that a medical expert's testimony about the age of bruises would have changed the verdict.

We therefore hold that Defendant has not made a prima facie case of ineffective assistance of counsel. Defendant's claim is more properly brought through a habeas corpus proceeding. *See State v. Grogan*, 2007-NMSC-039, ¶ 9, 142 N.M. 107, 163 P.3d 494 (expressing a preference for habeas corpus proceedings to address ineffective assistance of counsel claims).

## V.    Jury Instructions on Aggravated Battery

Defendant argued below that the district court erred in allowing the State to submit an instruction for aggravated battery with a deadly weapon in addition to the instruction for aggravated battery with a deadly weapon against a household member. On appeal, Defendant concedes that the argument advanced below is without merit and raises no further argument on this issue. *See State v. Foster*, 1999-NMSC-007, ¶ 41, 126 N.M. 646, 974 P.2d 140 (recognizing that "issues not addressed in an appellant's brief will be deemed abandoned"). We therefore hold that the district court did not err in allowing both instructions.

## CONCLUSION

We affirm Defendant's conviction.

**IT IS SO ORDERED.**

_____
**JONATHAN B. SUTIN, Judge**

**WE CONCUR:**

_____
**CYNTHIA A. FRY, Chief Judge**

_____
**LINDA M. VANZI, Judge**